UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 16-cv-11568 |
| SOLO LABORATORIES, INC., | ) ) ) |
| Defendant. | ) ) |

**VERIFIED COMPLAINT TO ENFORCE BREACH OF CONTRACT, SEEKING REPLEVIN, INJUNCTIVE RELIEF, AND AN AWARD OF DAMAGES**

NOW COMES the Plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo" or "Lender"), by and through its attorneys, Riemer & Braunstein LLP, and for its Verified Complaint to Enforce Breach of Contract, Seeking Replevin, Injunctive Relief, and an Award of Damages (the "Complaint"), Plaintiff states as follows:

**Introduction**

1. Plaintiff files this Complaint to obtain possession of its collateral being held by the Defendant in breach of the Defendant's obligation under a Bailee Waiver. Plaintiff seeks relief under 735 ILCS 5/19-101 et seq., for the immediate possession of its collateral and for the entry of an injunction preventing the Defendant from interfering with Plaintiff's immediate right to enter upon the Defendant's premises to obtain possession of and to remove its collateral. Plaintiff's right to possession of the collateral is, without question, superior to the Defendant because the Plaintiff is the holder of the first priority security interest in the collateral and the Defendant has expressly acknowledged the superiority of the Plaintiff's rights in the Bailee Waiver. Notwithstanding the clarity of its subordinate position and the clear terms of the Bailee

1

Waiver, the Defendant has failed, refused, and neglected to cooperate with the Plaintiff's efforts to obtain possession of its collateral and instead has actively interfered with those efforts and demanded payment from Plaintiff in direct contravention of its contractual obligations.

## Parties, Jurisdiction and Venue

2. The Lender is a national banking association with a usual place of business located at 100 Park Avenue, New York, New York.

3. The Defendant, Solo Laboratories, Inc. ("Solo"), is an Illinois corporation with a principal place of business located at 2124 Roberts Drive, Broadview, Illinois.

4. This Court has jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.

5. Venue is proper in this matter under 28 U.S.C. § 1391(b)(3) because Solo conducts business in this district and the assets which are the subject of this dispute are located in this district.

## Facts Common to All Counts

### The Lender's Loan Arrangement with Dr. Miracle's, Inc. and Johnson Products Company, Inc.

6. On or about June 26, 2013, the Lender entered into a loan arrangement (the "Loan Arrangement") with Dr. Miracle's, Inc. ("Dr. Miracle's") and its affiliate, Johnson Products Company, Inc. ("Johnson" and, together with Dr. Miracle's, the "Borrowers"). The Loan Arrangement is evidenced by, among other things, that certain Credit and Security Agreement dated as of June 26, 2013, as amended from time to time (collectively, the "Credit Agreement"). A true and accurate copy of the original Credit Agreement is annexed to this Complaint as Exhibit A.

7. Under the terms of the Credit Agreement, the Borrowers granted the Lender a first priority, perfected security interest in all of their assets including, without limitation, all of the Borrowers' inventory (the "Inventory") and the chemical and other formulas used to manufacture the Inventory (the "Formulas"). The Inventory largely consists of specialty hair care products. A true and accurate copy of the UCC-1 financing statements recorded in favor of the Lender is annexed to this Complaint as Exhibit B.

8. In connection with their business, the Borrowers relied on certain processors to process raw materials into finished goods constituting the Inventory sold by the Borrowers to their customers and to ship the Inventory to the Borrowers' customers. Solo was one of those key processors who made a variety of the specialty hair care products sold by the Borrowers. In addition, Solo shipped finished good Inventory to the Borrowers' customers. Between the time that Solo manufactured the Inventory and the time that the Inventory was shipped to the Borrowers' customers, the Inventory would be stored at one of the warehouses maintained by Solo.

9. As a result of the fact that Solo would be in possession of the Lender's collateral against which the Lender would make loan advances to the Borrower, the Lender relied upon Solo's execution of two Bailee Waivers (collectively, the "Waiver") in which Solo expressly acknowledged and promised that:

    a. The Lender's security interest in the products made by Solo and stored at Solo's warehouse and office locations at 2120 Roberts Drive, Broadview, Illinois and 2200 Parkes Drive, Broadview, Illinois (collectively, the "Solo Premises") "will be senior to all liens, claims and interests of [Solo]." See Paragraph (i);

    b. If the Borrowers default on their "obligations to the [Lender] and, as a result, the [Lender] undertakes to enforce it security interest in the Merchandise, [Solo] will (a) cooperate with the [Lender] in its effort to assemble all of the Merchandise and (b) store any or all of the Merchandise upon the request of and at the direction of the [Lender]." See Paragraph (ii); and

      c.      Solo agreed to provide sixty (60) days' written advance notice of any default in the agreements between Solo and the Borrowers prior to exercising any of its rights against the Borrowers with respect to such a default. This notice period was provided for the purpose of providing the Lender with the option (but not the obligation) to cure the default between Solo and the Borrowers. Regardless of whether any such default occurred or whether the Lender cured that default, Solo agreed that if the Lender is exercising its rights as a secured party, then Solo would not take any action that would interfere with the Lender's rights in the Borrowers' assets. Moreover, Solo agreed that it would not "exercise any rights against the Merchandise if the Bank is exercising its rights" as the senior secured creditor. See Paragraphs (vi) and (vii).

A true and accurate copy of the Waiver executed by Solo are annexed to this Complaint as Exhibit C.

      10.      On September 22 and 23, 2016, field examiners from the Lender and one or more representatives from the Borrowers conducted a physical inspection of the Inventory present at the Solo Premises (the "Solo Inventory"). In connection with this inspection, Solo representatives guided the Lender and the Borrowers to the Solo Inventory and provided it with a detailed list of what was included in the Solo Inventory. The Lender incorporated this information into the data obtained during its physical inspection, resulting in the Lender compiling a formal listing of the Solo Inventory reflecting nearly 100,000 units of product. A true and accurate copy of the resulting inventory itemization of the Solo Inventory is annexed to this Complaint as Exhibit D.

      11.      Based on the books and records of the Borrowers, the Solo Inventory had a cost value of $1,068,568.70 as of the date of inspection. The most recent appraisal of the Inventory commissioned by the Lender suggests that the net orderly liquidation value of the Inventory is equal to 58.6% of its cost value. Accordingly, Wells Fargo believes and avers that the Solo Inventory has a net orderly liquidation value of approximately $626,181.26.

12. Since the date of the Lender's inspection of the Solo Premises, Solo has not shipped any of the Solo Inventory to the Borrowers' customers. Accordingly, Wells Fargo believes that all of Solo Inventory remains on site at the Solo Premises.

13. In addition to the Solo Inventory, Wells Fargo believes and avers that Solo has in its possession certain Formulas which are used to manufacture the Borrowers' products (the "Solo Formulas"). Wells Fargo also believes and avers that Solo is in possession of certain Material Safety Data Sheets that are required to allow the Solo Inventory to be transported and stored safely and in compliance with all relevant regulations (the "Solo Data Sheets" and, together with the Solo Inventory and the Solo Formulas, the "Solo Collateral.")

14. The Borrowers defaulted under the terms of the Credit Agreement no later than September 30, 2016. A true and accurate copy of the letter provided by the Lender to the Borrowers notifying them of their default is annexed to this Complaint as Exhibit E.

15. As of December 19, 2016, the total amount due under the Credit Agreement is equal to $9,663,162.54 plus all accruing interest, fees, and charges the Lender is entitled to assess against the Borrowers as a result of their default until such time as the amounts due under the Credit Agreement are paid in full.

16. On October 27, 2016, Solo notified the Lender that the Borrowers had defaulted under their agreements with Solo, asserting that the Borrowers were indebted to Solo in the amount of $1,208,838.92. A true and accurate copy of Solo's letter is annexed to this Complaint as Exhibit F. This letter triggered the sixty (60) day period under the Waiver within which the Lender was provided with an opportunity – but not the obligation - to cure the Borrowers' alleged default. That sixty (60) day period is scheduled to expire on December 26, 2016.

17. Prior to the expiration of this sixty (60) day cure period, Solo did not ship any of the Solo Inventory to the Borrowers' customers. Indeed, as indicated above, Solo has not shipped any Inventory to the Borrower's customers since late September 2016.

18. On or about December 9, 2016 (still prior to the expiration of this sixty (60) day cure period), Solo filed suit against DRM seeking to recover $1,541,482.73 in allegedly outstanding amounts owed to Solo for the manufacture of product for the Borrowers including, upon information and belief, the Solo Inventory.

19. On December 16, 2016, the Lender provided Solo with written notice of the Borrowers' default under the Credit Agreement and demanded that Solo contact the Lender by 11:00 a.m. on December 19, 2016 to make arrangements by which the Lender could obtain possession of its collateral at the Solo Premises. A true and accurate copy of the letter to Solo is annexed to this Complaint as Exhibit G.

20. Despite receiving this letter, Solo has failed, refused, and neglected to cooperate with the Lender's request. Indeed, in an effort to procure payment of the amounts allegedly owed by the Borrowers to Solo, Solo – through its counsel – has refused to allow Wells Fargo or its representatives to access the Solo Premises. Specifically, Wells Fargo sent a field examiner to inspect the Solo Premises on December 19, 2016 and that field examiner was not permitted even to inspect the Solo Collateral. On December 20, 2016, Wells Fargo's counsel contacted Solo's counsel in an effort to obtain access to the Solo Premises, but Solo's counsel refused to cooperate with that request.

## Count I – Breach of Contract

21. Plaintiff re-states and re-alleges Paragraphs 1 – 20 as though fully set forth in this Paragraph 21.

22. The terms of the Waiver are clear: Solo agreed to cooperate with the Lender's efforts to enforce its rights against the Borrowers by obtaining access to the Solo Premises to obtain its collateral and Solo shall not hinder the Lender's efforts to do so.

23. In addition, Solo is prohibited from exercising any rights with respect to the Inventory, Formulas, and other assets of the Borrowers during the time that the Lender is exercising its rights.

24. Solo has breached the terms of the Waiver by, among other reasons,

   a. failing to cooperate with the Lender's efforts to obtain access to the Solo Premises so that it could obtain possession of the Solo Collateral; and

   b. by filing suit against DRM and otherwise interfering with the Lender's right to enforce its rights against the Borrowers.

25. Solo's breaches of contract have caused the Lender to suffer damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, Wells Fargo Bank, National Association requests that the Court enter the following:

   (1) A judgment in its favor and against Solo in an amount to be determined at trial together with all costs; and

   (2) Such other and further relief as the Court may deem just and equitable.

### Count II – Replevin

26. Plaintiff re-states and re-alleges Paragraphs 1 – 25 as though fully set forth in this Paragraph 26.

27. As a result of the Borrowers' default under the Credit Agreement, the Lender is entitled to enforce its rights under the Credit Agreement and the Uniform Commercial Code as applicable in Illinois to take possession of the Solo Collateral and all other assets of the Borrowers located at the Solo Premises.

28. A detailed description of the Solo Inventory is annexed to this Complaint as Exhibit D. In addition to the Solo Inventory, the Solo Formulas and Solo Data Sheets are critical to the Lender's ability to maximize the value of the Solo Inventory.

29. By executing the Waiver, Solo expressly acknowledged that the Lender has a superior interest in the Solo Collateral and, therefore, Solo has no right to possess those assets or to prevent the Lender from obtaining possession of them.

30. As a result of the foregoing, the Lender is entitled to possession of the Solo Collateral and Solo is wrongfully detaining it.

31. The Solo Collateral have not been taken for any tax, assessment, or fine levied by virtue of any law of the State of Illinois, against the property of the Lender, or against the Borrowers, nor seized under any lawful process against the goods and chattels of such plaintiff subject to lawful process nor held by virtue of any order for replevin against the Lender.

WHEREFORE, Plaintiff, Wells Fargo Bank, National Association requests that the Court enter the following:

(1) A judgment in its favor and against Solo for replevin plus all associated costs;

(2) An order authorizing the United States Marshall and/or Sheriff of Cook County to take the Solo Collateral from the possession of Solo at the Solo Premises and deliver it to Wells Fargo unless Solo executes a bond and security as required by Illinois law and to summon Solo to answer the Complaint or otherwise appear in the action, or in case the property or any part thereof is not found and delivered to the Marshall or Sheriff or other officer, to answer to Wells Fargo for the value of the same;

    (3) A further order authorizing the United States Marshall and/or Sheriff of Cook County to use reasonable force to enter into the property to recover same if Solo fails to deliver up to the Marshall or the Sheriff the Solo Collateral; and

    (4) Such other and further relief as the Court may deem just and equitable.

### Count III – Injunctive Relief

  32. Plaintiff re-states and re-alleges Paragraphs 1 – 31 as though fully set forth in this Paragraph 32.

  33. Pursuant to the terms of the Credit Agreement, the Borrowers granted Wells Fargo a security interest in all of their assets including the Inventory, Formulas, and Solo Collateral, wherever it may be located, as well as all books and records.

  34. In Section 10.1 of the Credit Agreement, the Borrowers agreed that, upon the occurrence of an Event of Default (as defined therein), Wells Fargo was entitled to exercise all rights available to it under the Uniform Commercial Code including, without limitation, taking possession of the Inventory and Formulas and selling it at a secured party's private or public sale. Indeed, the UCC expressly authorizes Wells Fargo, upon default by the borrower and/or guarantors, to take possession of its collateral, require the borrower and/or guarantor to assemble the collateral and make it available to the Wells Fargo at a place to be designated by Wells Fargo.

  35. As noted above, on December 16, 2016, Wells Fargo made demand upon Solo to contact Wells Fargo to arrange for the manner in which the Solo Collateral would be assembled and delivered to Wells Fargo so that it could enforce its rights as a secured creditor.

  36. With the Collateral comprising nearly 100,000 units of specialty hair care products located at the Solo Premises, the ability for Wells Fargo to obtain access to the Solo

Premises and any other location for the purpose of inspecting, cataloguing, preserving, and removing the Solo Collateral without the cooperation of Solo is nearly impossible. Even if it were possible, it would not likely be accomplished without a breach of the peace.

37. Under the terms of the Waiver, Solo agreed to provide Wells Fargo with access to the Solo Premises to allow it to obtain possession of the Solo Collateral. As noted above, on December 16, 2016, Wells Fargo made demand upon Solo to contact Wells Fargo for the purpose of providing access to the Solo Premises so that it could obtain possession of the Solo Collateral.

38. Despite demand, Solo and its counsel failed, refused, and neglected to provide Wells Fargo with access to the Solo Premises and Solo Collateral. As such, Solo is interfering with the rights granted to Wells Fargo under the Credit Agreement and the Waiver.

39. The actions and omissions by Solo prevent Wells Fargo from obtaining possession of the Solo Collateral. This lack of cooperation and refusal to provide Wells Fargo with the ability to access its collateral denies Wells Fargo the most basic of the rights provided by the Waiver and creates immediate and irreparable harm in light of the unique nature of the Solo Collateral.

40. Wells Fargo requires immediate access to the Solo Collateral and delivery to it of the associated Solo Formulas and Solo Data Sheets, without significant delay, so that it may conduct an inventory of the Solo Collateral, assess its condition, and obtain possession.

WHEREFORE, Plaintiff, Wells Fargo Bank, National Association requests that the Court issue an injunction requiring that:

    a. Solo and all of its officers, directors, partners, agents, principals, nominees, heirs, successors, assigns, employees, representatives, servants,

    attorneys, and all people in active concert or participation with them be restrained and enjoined from directly or indirectly assigning, alienating, selling, leasing, secreting, transferring, pledging, encumbering, concealing, destroying, damaging or in any other manner, disposing of, diminishing, or dissipating the Solo Collateral and any other assets of the Borrowers and any proceeds of such assets thereof until further order of this Court;

 b. Solo and all of its officers, directors, partners, agents, principals, nominees, heirs, successors, assigns, employees, representatives, servants, attorneys, and all people in active concert or participation with them be restrained and enjoined from directly or indirectly interfering with the rights of Wells Fargo under the Credit Agreement and the Waiver, including but not limited to, the right of Wells Fargo and its officers, employees, auctioneers, attorneys, representatives and agents to enter onto the Solo Premises, for the purpose of inspecting, appraising, auctioning, taking immediate possession of, removing and/or liquidating the Solo Collateral and any other assets of the Borrowers until further order of this Court;

 c. Solo and all of its officers, directors, partners, agents, principals, nominees, heirs, successors, assigns, employees, representatives, servants, attorneys, and all people in active concert or participation with them be restrained and enjoined from directly or indirectly damaging, altering, changing, destroying or disposing of any documents, communications,

electronic data, books, records and/or financial records concerning the Solo Collateral and any other assets of the Borrowers until further order of this Court.

                Respectfully Submitted,

                WELLS FARGO BANK, NATIONAL ASSOCIATION,

                By its Attorneys,
                RIEMER & BRAUNSTEIN LLP

Dated: December 22, 2016

                __/s/ Jeffrey D. Ganz_____
                Jeffrey D. Ganz (6307515)
                jganz@riemerlaw.com
                Phillip J. Block (6292407)
                pblock@riemerlaw.com
                Riemer & Braunstein LLP
                71 South Wacker Drive, Suite 3515
                Chicago, Illinois 60606
                (312) 780-1173

## VERIFICATION

I, Christopher Hill, am a Senior Vice President of Wells Fargo Bank, National Association, the plaintiff herein, verify that I have read the foregoing Verified Complaint to Enforce Breach of Contract, Seeking Replevin, Injunctive Relief, and an Award of Damages, and state that the facts contained therein are, to the best of my knowledge, information, and belief, true and accurate.

*Signed under the pains and penalties of perjury as of the date set forth below.*

Dated: December 22, 2016

WELLS FARGO BANK, NATIONAL ASSOCIATION,

By: _____
Christopher Hill
Senior Vice President

Sworn to before me this 22nd day of December 2016

_____
Notary Public

2074296.4

MARIA CAMACHO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CA5086952
Qualified in Nassau County
My Commission Expires October 27, 2017